KEYSTONE LUMBER COMPANY, Appellant, vs. TOWN OF BAY-
FIELD and another, Respondents.

*November 10 — November 24, 1897.*

*Taxation: School district boundaries: Purpose of levy: Counties: Aid to
   railroads: Issue of bonds: Escrow: When obligation becomes fixed.*

1. Where a town containing more than eight townships comprising
   but one school district has not adopted the township system of
   schools and the schoolhouses are located in an unincorporated
   village, lands situated more than ten miles therefrom, so that in
   no way could thirty-six square miles of contiguous territory be

Keystone Lumber Co. vs. Town of Bayfield and another.

laid out which would embrace both the village and the lands, are not within the school district, under sec. 412, S. & B. Ann. Stats., and are not subject to school district taxes.

2. A tax levied as a district school tax for district school purposes at a district meeting must be sustained as such, and its validity as a free high school tax by the town is immaterial.

3. Since bonds issued by a county to pay subscriptions to railroad stock and placed in escrow to be delivered from time to time as sections of the road were completed do not, under sec. 948, R. S., become obligations of the county until the road is completed according to the contract, sec. 943, R. S. (providing that counties, before issuing any bonds, shall provide for the collection of a direct annual tax to pay the interest thereon as it falls due and also to pay and discharge the principal within twenty years, and making such tax irrepealable after the issue of such bonds, and irrevocably pledging to their payment the money raised by such taxes), does not authorize or require taxation to pay such bonds until they have been delivered to the railroad company, and a tax levied prior to such delivery is void.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This is an action in equity to restrain the collection of a portion of the taxes for the year 1895 upon a large quantity of pine lands owned by plaintiff in the town of Bayfield, Bayfield county, and to have the same set aside and canceled. It appears that there was carried out upon the tax roll of said town for that year the gross sum of $63,623. Of this amount three items are in dispute upon this appeal, viz.: $4,150, being a part of the town tax for current expenses; $9,217, being a school district tax; and $5,379.93, being the town's share of a railroad tax of $24,000 levied by the county of Bayfield. The circuit court found all of the taxes valid, and dismissed the complaint, and the plaintiff appealed.

For the appellant there was a brief by *Tomkins & Merrill,* and oral argument by *W. M. Tomkins.*

For the respondents there was a brief by *Geo. G. Greene* and *W. W. Downs,* and oral argument by *Mr. Greene.*

WINSLOW, J. The items of taxes which are alleged to be illegal will be taken up in their order as indicated in the statement.

1. As to the item of $4,150, being a part of the town tax: The plaintiff's contention is that there was but $12,000 levied at the town meeting for general town purposes, whereas the sum of $16,150 was carried out upon the tax roll. While the records of the town are somewhat confused and meager, we think they fairly show that the sum of $16,150 was duly levied. We content ourselves by stating the conclusion on this point. A review of the evidence would serve no useful purpose.

2. As to the school district tax: It appears that the town of *Bayfield* contains more than eight townships of land; that there is but one school district in the town; that it has not adopted the township system of schools (under sec. 516 *et seq.*, R. S.); that the schoolhouses are situated in the unincorporated village of Bayfield, from which village the nearest lands of the plaintiff are ten miles distant, and could not in any sense be held to be contiguous to the village. The school district tax, however, was spread over the whole eight townships of land. The statute provides that "every school district shall be of contiguous territory and shall not embrace more than thirty-six square miles of land." S. & B. Ann. Stats. sec. 412. Plainly, the school district must embrace the village of Bayfield, where the schoolhouses and the population are; and there is no way by which thirty-six square miles of contiguous territory could be laid out which would embrace both the village and plaintiff's lands. It is certain, therefore, that the plaintiff's lands cannot be within the school district, and, consequently, cannot be subject to the school district tax. The tax is attempted to be sustained, however, as a free high school tax. It appears that a free high school was attempted to be established in the district at the district meeting held July 5, 1887, and

that such school was put in operation in September, 1887, and has been since maintained. Whether such free high school was established in the manner provided by law (S. & B. Ann. Stats. sec. 490) may be doubtful; but, however this may be, it is certain that the tax in question was not levied as a high school tax, but as a district school tax, for district school purposes, at a district meeting. It must be sustained, if sustained at all, as a district school tax, and, as the district could not embrace the plaintiff's lands, the tax manifestly falls.

3. As to the railroad tax: The facts as to this item are fairly and succinctly stated by the defendants as follows: "September 17, 1895, the county duly accepted the proposition of the Washburn, Bayfield & Iron River Railway Company for aid, by the issue of $240,000 of bonds of the county for subscription to a like amount of the company's stock. By the proposition the bonds were to be dated October 1, 1895; fell due in twenty years from such date; drew interest at five per cent., payable semiannually; were to be placed in escrow, and delivered in instalments, as the road was built from point to point through the county. November 12, 1895, the county board, by ordinance reciting the due adoption of the proposition by election, directed the subscription; the execution, as soon thereafter as possible, of the bonds; the execution forthwith, after the execution of the bonds, of an escrow agreement for placing the stock and bonds in the hands of a trustee, for delivery as the road was built from point to point; the deposit, on the execution of such agreement, of the stock and bonds with the trustee. The ordinance also provided 'that, from and after this date, there shall annually be levied in said county a tax, in addition to all other taxes, sufficient to pay, when due, the interest annually to grow due on such bonds, and also to pay and discharge the principal thereof by the time the same shall be due. . . . Said tax shall be a tax of $12,000

each year for said interest and $12,000 each year to be put
into a sinking fund, . · . . until such sinking fund shall
equal the full amount of the principal of such bonds, for
their redemption.' The proposition declared that all inter-
est that should accrue on the bonds up to the time of their
delivery under it should be canceled. The ordinance pro-
vided that so much of the interest tax as should not be
needed for interest in each year should fall into the sinking
fund, 'which sinking fund shall be established and invested
in substantial compliance with the provisions of secs. 958 and
959, R. S.' After the ordinance, on the same day, the directed
subscription was made. November 13, 1895, the board levied
the directed tax of $24,000 for the year 1895. By the propo-
sition, the company had until December 1, 1898, to earn the
bonds. When the tax was levied no bonds or interest had
been earned by the completion of any part of the road, nor
had any been earned up to the trial in March, 1896; but the
road had been located and the right of way obtained. The
bonds were not perfected until January 12, 1896, when, with
the stock, they were delivered to the trustee." The portion
of this tax which was apportioned to the defendant town,
and placed upon its tax roll, was $5,379.93. This tax is
challenged, on the ground that no part of the road had been
built, and not a dollar of the bonds earned. We think the
objection is well taken. The constitution of the state (sec.
3, art. XI) provides that "any county . . . incurring
any indebtedness . . . shall before or at the time of
doing so, provide for the collection of a direct annual tax
sufficient to pay the interest on such debt as it falls due, and
also to pay and discharge the principal thereof within
twenty years from the time of contracting the same." Sec.
943, R. S., provides that no bonds shall be issued by a county
"until an ordinance or resolution shall have been lawfully
passed directing that there shall be annually levied a tax,
in addition to all other taxes, sufficient to pay when due the

interest annually to grow due on such bonds, and also to pay and discharge the principal thereof by the time the same shall be due; and every such tax shall be, *after the issue* of such bonds, irrepealable and shall be annually levied and collected on all the taxable property of such municipality; and the money raised thereby shall be kept as a separate fund *irrevocably pledged to such purpose* and shall not be employed in any other." Sec. 948, R. S., after authorizing subscriptions to railroad stock by a municipality, the preparation of bonds, and the deposit of the same in escrow if so agreed, further provides that " no such bonds shall be delivered, *or be valid if delivered,* until the road, to aid in the construction of which such bonds were voted, shall have been completed and in operation by the passage of cars continuously from one terminus to such points as such company shall have agreed to construct the same in consideration thereof."

It is argued that these constitutional and legal provisions authorize and require the levy of the tax in question. The position taken is that the county must levy the tax of $24,000 each year, whether a mile of railroad is ever built or not; that, even though the railroad should not be built at all, the county must, during the three years which the company has to complete its road, levy, collect, and accumulate $72,000, which, the statute says, " shall be kept as a separate fund, irrevocably pledged " to the payment of bonds which can never become a debt. This seems to us an erroneous construction of the provisions in question. To our minds, the object aimed at was to provide that no obligation or debt should be incurred without simultaneous provision being made for taxation to discharge it within twenty years. It seems equally plain that it was not the object to require or authorize taxation and accumulation of funds, " irrevocably pledged " to the payment of bonds held in escrow, and which may or may not become binding obliga-

Keystone Lumber Co. vs. Town of Bayfield and another.

tions at some future time. This is not an ordinary subscription to the stock of a corporation, which would at once create an obligation to take and pay for it. It is, in effect, an agreement that the county shall deliver its bonds to the company in exchange for stock, provided the company will, within a certain time, build its road. The agreement plainly contemplates that, in the event of the failure to build the road, the bonds are to return to the county, and the stock to the railroad company. Suppose this event to take place; could it be said that there had ever been a debt or obligation within the meaning of that part of the statute requiring taxation to discharge it? And, if taxation has been imposed and moneys accumulated, what shall be done with such moneys, which, the law says, are to be "irrevocably pledged" to the payment of the proposed bonds? The statute must have a reasonable construction, and it seems to us that a construction requiring the accumulation of such sums of money by taxation to meet a mere contingency is entirely unreasonable. This is not the case of raising money in advance to build a courthouse, or construct public works, or provide for ordinary and necessary public uses. In all these cases the corporation determines in advance to incur the liability, and, if a contractor fails to perform his contract, it is reasonably certain that the corporation will employ other contractors or agents, and carry out the work. Here the liability or obligation in view, and for which taxes are to be raised, is the liability which will arise *in futuro* upon the bond when it is delivered. The fund to be raised is to discharge the bonds, not to pay for stock in the railroad company. If a bond is never earned, not a dollar will ever be due for stock. It is only after *issue* of the bonds (which, in this connection, clearly means their delivery to the railroad company) that the statute declares that the tax shall be irrepealable, and shall be annually levied and collected. The statute further says that no such bond shall be delivered,

or shall be valid if delivered, until the railroad is complete. The bond is not an obligation until the road is built according to the contract. We are entirely satisfied that the statute does not authorize or require taxation to meet what might be called a mere possibility of a debt at some time in the future.

It follows from these views that the district school tax and the railroad tax upon the plaintiff's lands were invalid and should have been set aside, and that the town tax was valid.

*By the Court.*— Judgment reversed, and action remanded with directions to enter judgment in accordance with the opinion.